**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MELINDA A. PRIMUS** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:24-cv-951** |
| | § | |
| | § | |
| | § | |
| **AMAZON.COM LLC,** | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |

---

**ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Melinda Primus ("Plaintiff" or "Ms. Primus"), by and through undersigned counsel, and files this Original Complaint against Defendant AMAZON.COM INC, ("Defendant" or "Amazon") alleging violations under the Texas Commission on Human Rights Act ("THCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII") for Defendant's unlawful employment practices based of disability and retaliation and, in support thereof, states as follows:

**I.**
**PARTIES AND PERSONAL JURISDICTION**

1.      Plaintiff, Melinda A. Primus, is an individual, who is a citizen of the State of Texas, residing in Covington, LA 70433 and was an employee of Defendant's Texas location at all times material to this Complaint.

2.      Defendant, Amazon, Defendant Amazon.com LLC. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon regularly conducts business within the State of Texas and employed Plaintiff to work within the State of Texas. Defendant is an employer within the meaning of the applicable statutes and employee more than fifteen (15) regular employees. Defendant may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**II.**

## SUBJECT MATTER JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights. and 42 U.S.C. 2000e, et seq.

4.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(d) because the unlawful employment practices alleged by Plaintiff occurred in the State of Texas and Defendant maintains offices, conducts business and resides in this District.

6.    Venue is proper by virtue of 29 U.S.C § 2617(a)(2) which provides concurrent jurisdiction of actions arising under Title VII of the Civil Rights Act of 1964.

III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.    Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dual filed with the Texas Workforce Commission ("TWC") pursuant to those agencies' work sharing agreement. After Plaintiff received notice of right to sue, Plaintiffs brought this action within the requisite number of days required by law.

IV.

## MISNOMER/ALTER EGO

8.    In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice. Plaintiff reserves all rights under Federal Rule of Civil Procedure Rule 15(c)(1)(B)  and/ or all other applicable Federal law to substitute the true name, assumed name, and/or common name of any Defendant upon Plaintiff's or the Court's motion.

**V.**                                  **FACTUAL BACKGROUND**

9.     Plaintiff is an African-American woman, over the age of forty (40).

10.    Plaintiff began working for Defendant on or around April 10, 2022 at the AFW-1 location as a seasonal employee, in the role of a "Picker." She was converted to a blue badge employee on or around May 8, 2022 and maintained her same role, working  long hours from 6:30 p.m. until 5:00 a.m.

11.    Ashley Wilson ("Wilson") was her initial supervisor.

12.    On or around June 14, 2022 Plaintiff was recognized and selected for the position of Seasonal Learning Ambassador, teaching and guiding new hires on how to do their department specific job duties.

13.    For the first several months of her employment, Plaintiff received praise for her attendance and performance. She was able to complete her tasks, despite the complicated and long "pick pattern," which required extensive walking throughout the warehouse, approximately 465,450 square feet in size. As a result of these pick patterns, Plaintiff began experiencing pain in her feet and left knee.

14.    On or around June 22, 2022, and July of 2022, the pain in Plaintiff's feet became so unbearable that she made two reports to Defendant's on-site first aid clinic known as "AMCare."

15.    Plaintiff reported that she could no longer bear weight on her right foot and requested reasonable accommodations.

16.  Plaintiff requested accommodations. Between June 2022 and July 2022, Plaintiff was granted approximately seven work days off, tso Plaintiff's physicians could decide what accommodations was needed. .

17.  On or around mid-July 2022, Patrick Benson ("Benson") became Plaintiff's new supervisor.

18.  Plaintiff retuned to work towards the end of July 2022.

19.  Following her doctor's appointment in July 2022, Plaintiff was diagnosed with Severe Plantar Fasciitis; severe thinning of the lining of her left knee; and severe swelling in both knees, due to the pick patten which required walking back and fourth in steel toe boots, between four (4) floors with four hundred (400) rows on each floor for excessive periods of time.

20.  Plaintiff went out on medical leave due to the injuries to her feet and knee.

21.  Plaintiff was scheduled to remain on leave for approximately six (6) to eight (8) weeks.

22.  On or around September 13, 2022, Plaintiff's leave was extended to November 18, 2022 because Defendant refused to accommodate Plaintiff's medical restrictions of no climbing, bending, and no walking for over five (5) hours.

23.  However, due to financial hardship, Plaintiff was forced to return to work ten (10) day earlier on November, 8, 2022.

24.  Upon her return to work, managers attempted to Labor Share Plaintiff. However Defendant assigned Plaintiff to the Pack Department, and told Plaintiff that because its internal system reflected her as assigned to the Pack Department, she could not be placed elsewhere unless her placement was first changed in the system.

25.   Accommodations were available in the Pack Department in September of 2022, but Defendant simply chose not to provide one to Plaintiff.While on medical leave Plaintiff received a partial salary.  She prematurely returned to work, despite her on-going injuries, as a result of Defendant's delay in providing an accommodation, which would have allow her to return to work in September 2022.

26.   On or around December of 2022, Plaintiff's worksite at AFW-1 was damaged due to a tornado, and employees, including Plaintiff temporarily relocated to  DAL - 2, an Amazon location in Irving TX, until April of 2023.

27.   At DAL -2, Plaintiff began having problems with a male co-worker who worked in the position of a "Water Spider." He attempted to intimidate Plaintiff after she raised concerns about a safety violation.

28.   Plaintiff filed a report with Human Resources ("HR "), informed her supervisor, Benson, and submitted a complaint via the internal ethics' hotline about the Water Spider's behavior. Plaintiff additionally reported the Water Spider's manager, Chloe (last name unknown) (Hispanic, female), because Chloe failed to take corrective action following Plaintiff's report of the safety violation.

29.   Following Plaintiff's ethics complaint, her work environment became increasingly hostile. Plaintiff began feeling isolated, and was constantly being watch    so that Defendant could find justification to terminate her employment Plaintiff told her managers that she filed an ethics complaint, and HR  coded the time she spent calling the ethics line, which classified and documented the time employees spent communicating to HR  or ethics.

30. Subsequently, Plaintiff returned to AFW1   after the rebuild where she remained in the Pack Department.

31. On or around April 10, 2023, Plaintiff was informed that she did not have accommodations and that as a result she could be labor shared to the Pick Department.

32. On or around April 13, 2023, Plaintiff's restrictions were revised by her Doctor which limited Plaintiff's mobility to walking no more five (5) hours per shift. Plaintiff's was to be on revised restrictions from April 28, 2023 until July 24, 2023.

33. During the time of  Plaintiff's revised restrictions, she began training as a Process Guide with two (2) other employees until late June of 2023.

34. Each Guide was to be assigned to assist in a specific Department. However, after two male Guides resigned, Plaintiff was made to assume their responsibilities, working as both a Process Guide for the Single Small and Single Large Departments in the Park Department, which required Plaintiff to walk for more than five (5) hours in violation of her restrictions..

35. Plaintiff complained to Benson, Supervisor, Tony Martinez ("Martinez"), and "Multi" Process Assistant, Jacorey Ramsey ("Ramsey"), that serving in the role of two Process Guides with the excessive walking was a violation of her restrictions.

36. On or around June 25, 2023, while still on restrictions, Ramsey told Plaintiff to report to the Single Large Department as a Packer, where Plaintiff did not have authorization through Amazon "permissions" to work that department.

37.   Plaintiff was not trained as a Packer in the Single Large Department and despite Plaintiff's repeated attempts to inform Ramsey that she was not trained in the department, Ramsey nonetheless forced Plaintiff's transfer to that department.

38.   On that same day, Plaintiff reported Ramsey's conduct  to HR and Christian Cantero ("Cantero"), Benson's supervisor.

39.   She requested a private meeting with Cantero, but he refused. Plaintiff was forced to report discrimination in the presence of three (3) other managers in an open cubicle. Plaintiff complained that she should not have to tell Ramsey where Plaintiff did not have permissions, as the manager Benson, could have verified Plaintiff's permissions, if Ramsey would have asked. Cantero said he would escalate the matter to management and address the issue with Benson.

40.   Plaintiff also proceeded to Human Resources to have her permissions checked to confirm which departments she could and could not work in, and to have her time coded by HR where she reported the issue regarding her being forced t work in a roles Department where she was not suppose to work because not trained and did not not have authorization through Amazon "permissions".

41.   HR and the Learning Department confirmed that per Plaintiff's permissions, she should not be transferred to a new department and instead should remain in the Singe Small Department.   However, rather taking any meaningful steps implement its decision and ensure Plaintiff's medical restriction would not be violated, HR merely instructed Plaintiff to personally inform Ramsey of Defendant's directive that Ramsey was not permitted to transfer Plaintiff.

42.  In an effort to avoid confrontation with Ramsey, Plaintiff chose to go home for the remainder of the day.

43.  When Plaintiff returned to work the following day on June 26, 2023, she requested Benson to approve her vacation request for the previous day when she went home. Benson refused, stating that company policy requires that vacation be approved twenty (24) hours prior to the request, and also informed her that the policy allows for "labor sharing" employees in between departments.

44.  Benson previously granted vacation approval(s) outside of the twenty-four (24) hour period, including to employees who did not report discrimination.

45.  Plaintiff informed management that she wanted to file a report with HR and an ethics complaint against all individuals involved in trying to labor share her to other departments where her accommodations were not in place, she was not properly trained or informed, and she requested that she be paid for the hours from the previous day.

46.  The following day on June 27, 2023, Plaintiff went to work feeling uncomfortable given the mistreatment she endured in the previous days.  She asked her supervisor, Martinez, if she could be excused momentarily to call Human Resources. Martinez attempted to dissuade Plaintiff from reporting discrimination, by   interrogating her and asking if she was calling to file a complaint, against whom, and for what.

47.  Despite Martinez' intimidation, Plaintiff called HR and filed a retaliation complaint regarding Benson's refusal to approve her vacation request for June 25, 2023.

48.  The next day, on June 28, 2023,  Martinez, Benson and Octavia (last name unknown) went to Plaintiff's work station to write her up for lack of productivity as a Packer in the Small

Department for the first time in her employment with Defendant. Benson could not explain how Plaintiff's productivity was deficient, and insisted on speaking with Cantero first—who was aware of the ethics complaint Plaintiff filed.   Without justification or explanation, Benson informed Plaintiff that the write-up would remain.

49. Since June 28, 2023, Defendant attempted to "labor share" Plaintiff on numerous occasions, in violation of her five (5) hour walking restriction,

50. Around June 28, 2023, Plaintiff contacted the Equal Employment Opportunity Commission..

51. As a result of Plaintiff's protected activity, Plaintiff was removed from her role as a Process Guide, a role which was compliant with her medical restrictions.

52. Following Plaintiff's two (2) ethics complaints, her workplace became even more hostile, managers stopped speaking to Plaintiff, and she received "dirty looks," and "mean stares," which lead Plaintiff to believe that her efforts to seek internal resolve were futile.

53. On  or around June 29, 2023  Plaintiff again contacted the EEOC and  also contacted Defendant's ethics hotline again.

54. On or around July 10, 2023, around 8:00 p.m., Sr. HR  Representative Josh (Last name unknown), contacted Plaintiff regarding her ethics complaint that she raised on June 29, 2023—after Plaintiff was forced to follow up with Ethics  because Josh missed the 3 p.m. appointment scheduled for earlier that day.

55. The next day, on or around July 11, 2023, at 10:04 p.m., Josh informed Plaintiff that he "completed a thorough investigation" of her that June 29, 2023 ethics complaint "and did not find a violation of Amazon policy or standards of conduct."

56.   On or around July 12, 2023, Plaintiff informed Josh that she filed an EEOC complaint.

57.   On July 13, 2023, Plaintiff was notified by a co-worker that HR had begun an investigation into an anonymous complaint of her alleged use of foul language in the women's restroom.  However, the witnesses that were in the restroom with Plaintiff, who could attest that Plaintiff had not used foul language, were not questioned by HR.

58.   Defendant's attempts to punish Plaintiff and remove Plaintiff from her employment were relentless.  In July of 2023, another false anonymous complaint was lodged against Plaintiff, this time of alleged sexual harassment. On or around July 18, 2023, Plaintiff was brought in for questioning by HR.   Plaintiff adamantly disputed the allegations, which were found to be unsubstantiated. During the meeting with HR, Plaintiff again informed that she contacted the EEOC, and stated that she believed the series of anonymous complaints, among various other mistreatment, were in retaliation for her prior complaints of discrimination.

59.   The toll on Plaintiff's well-being from working in a retaliatory and hostile work environment, which Defendant created and tolerated, forced Plaintiff to taking personal leave to address her mental health as of July 18, 2023.

60.   Plaintiff returned to work on October 8, 2023.

61.   On or around October 9, 2023, one day after Plaintiff returned to work,  Martinez asked Plaintiff to move to another work station. An associate whom Plaintiff did not know, proceeded to push Plaintiff's totes across the production floor for her to Pack. Plaintiff requested that the associate not pull the work from line that she was assigned to because she did not want to be responsible for his drop in productivity rate as result of him leaving

his station to push her work. Martinez came and spoke with Plaintiff regarding the associate, to which Plaintiff again asked that the associate not push her work to Pack. There was no use of foul language when Plaintiff spoke with either of the two men on October 9, 2023.

62. On October 10, 2023, two days after Plaintiff's return to work, Plaintiff's co-worker Tamika Saunders ("Saunders") used inappropriate language towards Plaintiff, for which Plaintiff filed a complaint with Human Resources.   Saunders also filed a complaint, alleging the same of Plaintiff.  HR investigated both and found Plaintiff's complaint was substantiated while Saunders' was not.

63. Plaintiff made another request for accommodations based on her foot and knee diagnosis, asking that she remain in the Single Small Pack Department. Her request was approved from October 17, 2023 through January 17, 2024.

64. On or around November 14, 2023, Plaintiff was instructed to pack all of her belongings and was summoned to HR by Martinez, one of the very managers who was the subject of Plaintiff's prior complaints.

65. In the November 14, 2023 meeting with HR, Josh the AFW -1, Site Supervisor was present. Plaintiff was informed for the first time, that a secret investigation had been taking place regarding an anonymous complaint of her alleged use of foul language on October 9, 2023. Plaintiff had not been written up for any October 9, 2023 allegation of foul language.   As a result of the secret investigation, Plaintiff was unlawfully immediately.

66. During the same November 14, 2024  meeting, Plaintiff again complained to management and HR that she had contacted the EEOC and that she was being retaliated against.

67. Plaintiff filed an appeal of the termination decision and requested that an independent, external team or individual conduct the review.   Instead, the same individuals in HR involved in her internal complaints, and termination decision conducted the review and ultimately upheld their own decision to terminate Plaintiff's employment.

68. The foregoing actions violated Plaintiff's rights under the TCHRA and Title VII of the Civil Rights Act of 1964, by engaging in retaliation.


VI.
## CAUSES OF ACTION

### A.  COUNT ONE: TITLE VII RETALIATION

69. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

70. Title VII protect employees who engage in a protected activity from retaliation by their employer.

71. Defendant intentionally and unlawfully retaliated against Plaintiff due to her conduct protected under Title VII.

72. Plaintiff had a reasonable, good faith belief that Defendant engaged in unlawful discrimination and retaliation against her.

73. Because of Plaintiff's reasonable, good faith belief that Defendant subjected her to unlawful discrimination and retaliation, Plaintiff reported the conduct to her supervisors, members of Defendant's management team, human resources, the ethics hotline, and the

EEOC.

74. Plaintiff engaged in conduct protected under and Title VII, where Plaintiff both opposed Defendant's discriminatory and retaliatory practices based on her reported disability which impaired her ability to walk, as well has her mental health condition, and participated activities that occur in conjunction with filing an EEOC charge.

75. Plaintiff additionally engaged in protected activity when she requested reasonable accommodations.

76. Plaintiff was subjected to numerous materially adverse employment actions at the time and after the protected conduct occurred and as a result of such conduct that was designed to punish Plaintiff for her complaints and dissuade Plaintiff and other employees from reporting discrimination in the future.

77. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to the materially adverse actions at issue.

78. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to physical and financial harm, as well as and mental and emotional distress.

79. Defendant's actions proximately caused Plaintiff's injuries.

80. Plaintiff requests relief as provided in the Prayer for Relief below.

**B.  COUNT TWO: RETALIATION UNDER THE TCHRA**

81. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

82.     The TCHRA, protect employees who engage in a protected activity from retaliation by their employer.

83.     Defendant intentionally and unlawfully retaliated against Plaintiff due to her conduct protected under the TCHRA.

84.     Plaintiff had a reasonable, good faith belief that Defendant engaged in unlawful discrimination and retaliation against her.

85.     Because of Plaintiff's reasonable, good faith belief that Defendant subjected her to unlawful discrimination and retaliation, Plaintiff reported the conduct to her supervisors, members of Defendant's management team, human resources, the ethics hotline, and the EEOC and the Texas Workforce Commission.

86.     Plaintiff engaged in conduct protected under the TCHRA , where Plaintiff both opposed Defendant's discriminatory and retaliatory practices based on her reported disability which impaired her ability to walk, as well has her mental health condition, and participated activities that occur in conjunction with filing an EEOC charge dual filed with the Texas Workforce Commission.

87.     Plaintiff additionally engaged in protected activity when she requested reasonable accommodations.

88.     Plaintiff was subjected to numerous materially adverse employment actions at the time and after the protected conduct occurred and as a result of such conduct that was designed to punish Plaintiff for her complaints and dissuade Plaintiff and other employees from reporting discrimination in the future.

89.     But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to the materially adverse actions at issue.

90.     As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to physical and financial harm, as well as and mental and emotional distress.

91.     Defendant's actions proximately caused Plaintiff's injuries.

92.     Plaintiff requests relief as provided in the Prayer for Relief below.

**C.  COUNT THREE: VIOLATION OF ADA/ADAAA - Disability**

93.     Plaintiff, restate and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

94.     Plaintiff was a qualified individual with a disability.

95.     Defendant violated the ADA by interfering with and refusing to Plaintiff's accommodations and by terminating her after she requested an accommodation to remain working in the in the Single Small Pack Department and limit her walking to no more than five (5) hours pers shift.

96.     Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made a request for reasonable accommodation, including a walking only five (5) hours per shift instead of the entirety of her shift.

97.     Plaintiff was subjected to a hostile work environment, and retaliated against due to her disability and due to requests for reasonable accommodation.

98.     Defendant discriminated against Plaintiff by interfering with and refusing to accommodate her and by terminating her while on approved accommodations.

99.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

100.    As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## D.  COUNT FOUR: VIOLATION OF THE TCHRA - Disability

101.    Plaintiff, restate and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

102.    Plaintiff was a qualified individual with a disability.

103.    Defendant violated the TCHRA by interfering with and refusing to Plaintiff's accommodations and by terminating her after she requested an accommodation to remain working in the in the Single Small Pack Department and limit her walking to no more than five (5) pers shift.

104.    Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made a request for reasonable accommodation, including a walking only five (5) hours per shift instead of the entirety of her shift.

105.    Plaintiff was subjected to a hostile work environment, and retaliated against due to her disability and due to requests for reasonable accommodation.

106.    Defendant discriminated against Plaintiff by interfering with and refusing to accommodate her and by terminating her while on approved accommodations.

107.   As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

108.   As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**E.  COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

109.   Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

110.   Defendant by and through its agents intentionally abused its authority over Plaintiff to target and harass Plaintiff.   Defendant was made aware on multiple occasions of harassing conduct against Plaintiff and refused to act to prevent and/or remedy it.

111.   Defendant by and through its employees and agents, including Plaintiff's supervisors, engaged in conduct that was both degrading and humiliating, intentional and mean spirited, and that conduct went beyond all possible bounds of decency and a reasonable person in Plaintiff's condition would regard such behavior as intolerable, extreme, and outrageous.

112.   Defendant's actions caused Plaintiff emotional, mental, and physical distress and that distress was so severe that it resulted in chronic stress, and anxiety.

## F.  COUNT SIX: NEGLIGENT SUPERVISION

113.   Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

114.   Defendant had a duty to supervise Patrick Benson, Tony Martinez, Christian Cantero, Chloe (Last Name Unknown), and Jacorey Ramsey as employees and supervisors.

115.   Defendant breached its duty to supervise Patrick Benson, Tony Martinez,Christian Cantero, Chloe (Last Name Unknown), and Jacorey Ramsey when Defendant repeatedly ignored Plaintiff's internal workplace complaints informing Defendant of the conditions and conduct of which she was being subjected to.

116.   Defendant's failure to supervise Patrick Benson, Tony Martinez,Christian Cantero, and Chloe (Last Name Unknown) and Jacorey Ramsey allowed them to continually harass, intimidate, and and retaliate against Plaintiff, causing her emotional, mental, and physical harm.

117.   Defendant, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her employment status.

## G.  COUNT SEVEN:  RESPONDEAT SUPERIOR AND RATIFICATION

118.   Whenever in this complaint it is alleged that the Defendant, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did

such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

VII.

## DAMAGES

119.   Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

120.   As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

121.   Defendant's actions were at all times done with malice and/or reckless indifference to Plaintiff's protected rights, thus entitling her to recover punitive damages.

**VIII.**

## ATTORNEY'S FEES AND COSTS

122.   Plaintiffs are entitled to an award of attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and 42 U.S.C §1988, 29 U.S.C § 2617, and §21.259 of the Texas Labor Code.

123.   To redress the injuries sustained by the Plaintiff on account of Defendant's action, Plaintiff has retained the undersigned counsel to represent her in this action.

124.   Plaintiff therefore seeks recovery of her reasonable attorney's fees, expert fees, and costs incurred in the prosecution of this matter; including reasonable attorney's fees in the event of appeal to the Court of Appeals and/or Supreme Court.

**IX.**

## **JURY DEMAND**

125.   Plaintiff hereby demands a trial by jury on all issues so triable.

**X.**

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendant awarding Plaintiff the following:

(a) Back pay, including but not limited to lost wages, overtime pay, and other employment benefits;

(b) Front pay and benefits in lieu of reinstatement where reinstatement is not feasible;

(c) Actual damages;

(d) Compensatory damages;

(e) Punitive damages;

(f) Attorneys' fees, expert fees, and cost of suit;

(g) Prejudgment and post-judgment interest, in the maximum amount allowed by law;   and

(h) Such other and further relief, both general and special, at equity and in law, to which Plaintiff may be justly entitled.

Respectfully submitted this 14th day of March, 2024.

By: /s/ *Lisa Ventress*

Lisa Ventress
Federal Bar No. 3471199
Texas Bar No. 24076751
lisa@theventressfirm.com
The Ventress Firm, P.C.
1322 Space Park Dr. Ste. C222
Houston, TX 77058
Tel. (832) 797-3855
Fax. (832) 565-1752

**ATTORNEY FOR PLAINTIFF**